PATRICIA BARTLETT *v.* HERBERT E. KRAUSE ET AL.
(13358)

HEALEY, SHEA, GLASS, COVELLO and HULL, Js.

Argued October 7—decision released December 13, 1988

*Michael N. LaVelle,* with whom, on the brief, was *LeeAnn Solomon Christ,* for the appellants (defendants).

*Howard A. Lawrence,* for the appellee (plaintiff).

ARTHUR H. HEALEY, J. In this case, the plaintiff, Patricia Bartlett, was terminated as fire marshal of Redding Fire District No. 1 by the defendants, Herbert Krause, Hobart Pardee and Davis Bernhardt, the board of fire commissioners of that fire district. The plaintiff appealed to the Superior Court, which con-

cluded that the defendants had acted illegally, arbitrarily and in abuse of their discretion. This appeal followed. We find no error.

Initially, several background circumstances should be set out. On January 14, 1986, the plaintiff was appointed by the defendants as fire marshal of Redding Fire District No. 1. On June 11, 1986, the defendants informed Bartlett in writing[1] that she was terminated from that position. That letter did not set out any specific ground for her dismissal nor did it indicate that she had any opportunity to be heard in her own defense. Thereafter, by letter dated July 3, 1986, the plaintiff's counsel maintained that she had been "illegally terminated" as fire marshal, pointing out that the defendants had not complied with the public hearing requirements of General Statutes § 29-300[2] and

---

[1] The defendants' letter of June 11, 1986, was the following:

"REDDING FIRE DISTRICT NO. 1
P.O. Box 151
REDDING, CONNECTICUT 06875

June 11, 1986

Mrs. Pat Bartlett
41 Church Hill Rd.
Redding, Ct. 06896

Dear Pat,
As you are aware, your six (6) month probationary period as acting Fire Marshal for Redding Fire District No. 1 expires on June 14, 1986.

After a careful review the Fire Commissioners have determined that your performance has been unacceptable and therefore you are hereby relieved of your duties effective immediately.

Very truly yours,

Redding Fire District No. 1 Commissioners:

Mr. Hobart Parde

Mr. Herbert Krause

Mr. Davis Berhnardt"

[2] General Statutes § 29-300 provides: "HEARING PRIOR TO DISMISSAL. APPEAL. No local fire marshal shall be dismissed unless he has been given

demanded that a hearing be scheduled. On July 23, 1986, the defendants rescinded the earlier termination.[3] By letter dated August 8, 1986, the defendants notified Bartlett that she would "have the opportunity to be heard in [her] own defense, personally or by counsel, at a public hearing that [had] been noticed for 3:00 p.m. on August 15, 1986 [Friday] at the Redding Ridge Fire House." That letter also contained a notice of the specific grounds for the plaintiff's dismissal. The plaintiff, with counsel, was present at the public hearing on August 15, 1986. The trial court specifically found that the defendants "selected their own attorney to serve as moderator for [that] hearing" and thus the "[d]efendants' attorney was thereby thrust into the untenable position of having to serve simultaneously as a moderator and as an advocate."

notice in writing of the specific grounds for such dismissal and an opportunity to be heard in his own defense, personally or by counsel, at a public hearing before the authority having the power of dismissal. Such public hearing, unless otherwise specified by charter, shall be held not less than five nor more than ten days after such notice. Any person so dismissed may appeal within thirty days following such dismissal to the superior court for the judicial district in which such town, city or borough is located. Service shall be made as in civil process. Said court shall review the record of such hearing and, if it appears upon the hearing upon the appeal that testimony is necessary for an equitable disposition of the appeal, it may take evidence or appoint a referee or a committee to take such evidence as it may direct and report the same to the court with his or its findings of fact, which report shall constitute a part of the proceedings upon which the determination of the court shall be made. The court, upon such appeal, and after a hearing thereon, may affirm the action of such authority, or may set the same aside if it finds that such authority acted illegally or arbitrarily or in the abuse of its discretion or with bad faith or malice."

[3] The defendants, in their brief, argue that when they informed the plaintiff on June 11, 1986, that she was terminated, they were "under the impression that Connecticut General Statutes § 29-300 required a hearing only if a dismissed fire marshall requested one. . . ."

The July 23, 1986 letter also noted that defendants' counsel had asked Commissioner Krause "to prepare a list of specific charges."

In its lengthy memorandum of decision,[4] the trial court pointed out that the record disclosed, inter alia, the following events. The plaintiff's problems with the defendants began on February 26, 1986, when she conducted an inspection of the building department in Redding. In her report on that inspection, she cited eight violations of the fire code including blocked access to the first floor exit, only one second floor exit and combustibles stored in the basement. An entire listing of the violations cited by the plaintiff was published in a newspaper on March 30, 1986. Thereafter, the first selectman requested relief from the requirements of the fire code and, on May 15, 1986, the plaintiff recommended that the request for modification or relief be denied. Her recommendation was then overruled and the relief requested was granted by the state fire marshal on May 20, 1986. Several days after that action, the defendants notified Bartlett that she was making an excessive number of long distance calls. On June 11, 1986, she was fired because the defendants had "determined that [her] performance [had] been unacceptable."

The trial court also pointed out that the defendants set forth the following reasons for terminating the plaintiff: "(1) She was a probationary employee who did not pay any attention to the probationary status[5] of her appointment, and either wilfully ignored or failed to understand that she was under an obligation to prove her abilities; (2) she was not able to carry out her duties independently as evidenced by a large number of long distance telephone calls to the State Fire Marshal's

---

[4] The return of record to the Superior Court included a certified copy of the transcript of the public hearing before the defendant commissioners on August 15, 1986.

[5] At oral argument, the defendants' counsel, when asked whether the plaintiff's appointment was probationary, conceded that under our statutes he found no distinction between a probationary or nonprobationary appointment insofar as this plaintiff's rights were concerned.

office; (3) she displayed a lack of common sense and reasonableness in her approach to her duties; (4) she seemed unable to apply the fire code in a practical and responsible way; (5) she fundamentally misunderstood the duties and powers of her office; (6) she did not attend meetings of the Board of Fire Commissioners or report her activities to them; (7) she was unavailable for consultations and the signing of blasting permits; and (8) at the scene of fires, she parked her vehicle in such a way as to block access of the fire equipment and generally interfered with the firefighters' performance of their duties."

At the hearing of August 15, 1986, as the trial court found, the defendants refused to produce any evidence and the plaintiff was advised that under the statute it was her burden to produce the evidence. In indicating that the plaintiff then produced evidence, the trial court noted that that evidence included: Ronnie Greenman, a state trooper for eighteen years, who had been assigned to the state fire marshal's office for the past eight and one-half years, testified at length as to the plaintiff's competence as well as to standard procedures among other fire marshals. He stated that he had accompanied the plaintiff on "99.9" percent of her inspections and he found her "far superior" to most fire marshals. Greenman also said that once the plaintiff cited someone for a violation, she could not waive it because only the state fire marshal's office has the authority to do that. This witness concluded that she did everything "correct," "she contacted our office properly," "she is doing her job 100%" and that "if her phone bill is not high she's not doing her job."[6] Cynthia Williams, the deputy fire marshal for the town

---

[6] Greenman also said that "[i]f she's not calling my office and getting my technical service from my technical service section—she's not doing her job. . . . She could call every day of the week, for the rest of the time she's a Fire Marshal and she'd still be correct."

of Weston, testified that the plaintiff was "competent," attended fire marshals' conferences and association meetings and that "she was interested in doing the best possible job she could." Fred Moore, the fire marshal of the town of Weston, testified that the plaintiff was responsive, competent and that he would recommend her as a deputy fire marshall.[7] Jean Whitham, chairman of the commission for the elderly, which supervised the Redding Senior Center, testified that the plaintiff "found at least twelve (12) infractions" at that location,[8] that some of these were taken care of, that the minimum amount of changes that could be made were made and that all the center's "systems—that were in place—are now actually working." Gordon Johnson, a Redding selectman and a former fire commissioner, said that when he examined the plaintiff's reports of her citations of the town office building, upon his becoming a selectman, he found "that most of the things that she was observing were the same sort of things that I had observed when I took a look in the basement . . . . "

In its analysis, the trial court opined that the right to appeal the decision of an administrative agency existed only if given by statute and it referred specifically to General Statutes §§ 29-299[9] and 29-300.[10] It

[7] The plaintiff's counsel asked Fred Moore hypothetically that if the plaintiff lived in Weston, would he recommend her as a deputy fire marshal in Weston, "if such an opportunity existed." Moore answered: "If such an opportunity existed—sure."

[8] Whitham referred to the 'fact that the batteries on the alarm system were not working as well as the need for a heat detector in the attic where there are a lot of materials stored.

[9] General Statutes § 29-299 provides: "DISMISSAL OF LOCAL FIRE MARSHAL. If a local fire marshal fails to faithfully perform the duties of his office, the appointing authority of the municipality in which he is serving shall, after proper inquiry, dismiss him and appoint another in his place. The state fire marshal shall be promptly notified of the removal from office of any local fire marshal and of the appointment of his successor."

[10] See footnote 2, supra.

determined that § 29-300 clearly gave certain protections to fire marshals and that it precluded summary dismissal without prior written notice of the specific grounds for dismissal and an opportunity to be heard in her own defense. Although the plaintiff was given a "public hearing," she claimed in the trial court that the hearing lacked fundamental fairness because the defendants had made their decision to terminate her even prior to the hearing. the plaintiff argued that the defendants, by their own admission, had conceded this by the answer of the named defendant, Herbert Krause, to an inquiry of the plaintiff's counsel as to whether the earlier decision that she was to be terminated on June 14, 1986, "is [that] still the decision of this Commission when this hearing started today?" Krause replied, according to the trial court, "I'd have to say yes . . . . "[11]

Although it acknowledged the plaintiff's claim of predetermination and predisposition, the trial court concluded that "§ 29-300 requires the commission to reach a decision to terminate the plaintiff before it sets up the public hearing." The trial court maintained that if predetermination were the plaintiff's only argument, she would be hard-pressed to prevail "albeit the facts do substantiate her claims of predisposition and predetermination." It did decide, however, that the

---

[11] An examination of the transcript discloses that Krause's entire answer to the question was the following: "I'd have to say yes unless there is evidence presented to us, which is what I understand the Statute provides is an opportunity for the people here to say, 'Hey, Herb—you know—she did a good job here. We were unaware of this.' We've heard the other side of it where people are unhappy with her performance. That's what our decision is based upon and—you know—things that we dealt with her. Mr. Moore, from Weston, rode in the car with her to dinner. We worked with her on a basis where people reported to us—complaining—not riding in the car with her. And granted you work (inaudible) professionally, so this is our opportunity to hear the other side. We all heard one side—you know—the complaints. And now we're hearing the other side—if that's what you're saying."

plaintiff had a property right under § 29-300 that was protected by the fourteenth amendment to the United States constitution. She could not be dismissed without being given written notice of the specific grounds for the dismissal and an opportunity to be heard in her defense. The plaintiff, the trial court continued, was even further protected by due process. The court decided that her protected right to her position as fire marshal could be revoked only by a hearing at which certain minimum due process requirements were satisfied. These requirements were then recited to be: "(a) written notice of the claimed violations; (b) disclosure of evidence against him or her; (c) opportunity to be heard in person and to present witnesses; (d) the right to confront and cross-examine adverse witnesses; (e) a neutral and detached hearing body; (f) a written statement by the fact-finders as to the evidence relied on and reasons for action. *Morrissey* v. *Brewer*, 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)."

In this connection, the trial court stated that after the plaintiff had found "substantial fire code violations" in her inspection of two principal municipal structures, a listing of these violations appeared in a local newspaper. She denied requests to modify her recommendations. These occurrences "further added to the chagrin and embarrassment" of the defendants according to the trial court. Further, the trial court found that they "ignored" the procedural mandates of § 29-300 and fired the plaintiff and notified her of the specific charges and set a public hearing only after a demand by her counsel. Obviously concerned over the defendants' selection of their own attorney as the moderator of that hearing, it concluded that that hearing was not "meaningful" not for that reason alone, but also because of the "total failure" of the defendants to produce any evidence whatsoever. Despite the fact that the public hearing was "further tainted" by the defend-

ants' setting that hearing for 3 p.m. on a Friday afternoon, the trial court, nevertheless, said that the testimony at that hearing was "overwhelmingly" in favor of the plaintiff. Further, it maintained that a hearing at which the dismissing authority produces no evidence, "albeit its own conclusions in the form of a written statement, affords the other party no opportunity to inquire, cross-examine and confront her accusers." Determining that the purpose and intent of § 29-300 was to protect fire marshals from summary and unfair dismissal, the court observed that such protection had no value unless there was compliance with the due process inherent in the statute. Recognizing that the defendants were authorized to dismiss a fire marshal, the trial court noted that they could only do so "if the statutory procedure is followed, the evidence warrants dismissal and the due process implicit in the statute is complied with." That, the trial court held, had not been the situation in this case.

On appeal, the defendants claim that the trial court erred in: (1) its interpretation of General Statutes § 29-300; and (2) concluding that the plaintiff was denied due process of law.

It is helpful here to discuss briefly the statutory scheme surrounding the issues that we must decide. General Statutes § 29-297,[12] passed in 1955 (then

---

[12] General Statutes § 29-297 provides: "APPOINTMENT OF LOCAL FIRE MARSHALS AND DEPUTIES. The board of fire commissioners or, in the absence of such board, any corresponding authority of each town, city or borough, or, if no such board or corresponding authority exists, the legislative body of each city, the board of selectmen of each town or the warden and burgesses of each borough, or, in the case of an incorporated fire district, the executive authority of such district shall appoint a local fire marshal and such deputy fire marshals as may be necessary. In making such appointment, preference shall be given to a member of the regular or volunteer fire department of such municipality. Each local fire marshal shall be sworn to the faithful performance of his duties by the clerk of the town, city, borough or fire district and shall continue to serve in that office until removed

§ 1993d), concerns the *appointment* of local fire marshals and their deputies. It now provides, inter alia, that "[e]ach local fire marshal shall be sworn to the faithful performance of his duties . . . and shall continue to serve in that office until removed *for cause.*" (Emphasis added.) The language "and shall continue to serve in that office until removed for cause" was not added to § 29-297 until 1971. See Public Acts 1971, No. 569, § 1. General Statutes § 29-299, which concerns the *dismissal* of a local fire marshal, provides in part that where such a marshal "fails to faithfully perform the duties of his office, the appointing authority . . . shall, after proper inquiry,[13] dismiss him and appoint another in his place." This statute has remained unchanged for almost forty years. General Statutes § 29-300, which is entitled "Hearing prior to dismissal. Appeal," assumed essentially its present form in 1955. Prior to its amendment in 1955, this section provided: "[A]ny local fire marshal, of any town, city or borough, upon suspension or dismissal, shall have the right to appeal within thirty days following such suspension or dismissal to the court of common pleas for the county . . . . Said court shall hear such appeal *de novo* . . . ." (Emphasis added.) General Statutes (Sup. 1951) § 190b. The de novo language was replaced in § 29-300 by the following: "Said [superior] court shall review the record of such hearing, and if it appears upon the hearing upon the appeal that testimony is necessary for an equitable disposition of the appeal, it may take evidence or appoint a referee or a committee to take such evi-

for cause. Such clerk shall record his acceptance of the position of local fire marshal and shall report the same in writing to the state fire marshal within ten days thereafter, giving the name and address of the local fire marshal and stating the limits of the territory in which the local fire marshal is to serve."

[13] At oral argument, upon inquiry by the court, the defendants' counsel said that he could not concede that the "after proper inquiry" language of General Statutes § 29-299 related to a pretermination hearing.

or appoint a referee or a committee to take such evidence as it may direct and report the same to the court with his or its findings of fact, which report shall constitute a part of the proceedings upon which the determination of the court shall be made. . . . '' General Statutes (Sup. 1955) § 425d. With the amendment deleting the de novo appeal, it is fair to assume that this present language of § 29-300 concerning the review by the Superior Court on appeal is now more limited than it was prior to the amendment.[14] The function of the trial court upon appeal is different when the appeal is de novo. See *Dudow* v. *Liquor Control Commission,* 132 Conn. 664, 666–67, 46 A.2d 896 (1946); see also General Statutes (Sup. 1945) § 640h; 5 Am. Jur. 2d, Appeal and Error § 703.

We begin our analysis by acknowledging that the plaintiff's federal constitutional due process claim depends upon her having a property right in continued employment as a local fire marshal.[15] *Cleveland Board*

---

[14] We note that there are other statutes where the "equitable disposition of the appeal" language now found in General Statutes § 29-300 has replaced a de novo hearing upon appeal to the court. See, e.g., General Statutes § 7-302, entitled "Hearing prior to dismissal of fire department head. Appeal"; General Statutes § 7-278, entitled "Hearing prior to dismissal of municipal police head. Just cause requirement. Appeal"; see also General Statutes (Sup. 1951) § 190b.

[15] In their brief and at oral argument, the defendants maintained that the plaintiff had no property interest in her position as a municipal fire marshal. In doing so, they argued before us that she received something on the order of $70 per month as remuneration for that position. Where there is a property interest in continued employment, a deprivation of that employment is not de minimis. The defendants, however, have failed to acknowledge the prestige of such a position in the community, as well as the satisfaction to those who are called to render such services. "[I]ts gravity is irrelevant to the question whether account must be taken of the Due Process Clause." *Goss* v. *Lopez,* 419 U.S. 565, 576, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975); see, e.g., *Garraghty* v. *Jordan,* 830 F.2d 1295, 1299 (4th Cir. 1987) (prison warden's suspension, although lasting only five days, was not a de minimis deprivation because with that he lost compensation and other emoluments of his office for the period of suspension); see *Boals* v. *Gray,* 775 F.2d 686 (6th Cir. 1985) (a correctional officer's five day sus-

*of Education* v. *Loudermill,* 470 U.S. 532, 538, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985); *Board of Regents* v. *Roth,* 408 U.S. 564, 576–78, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972); see *Reagan* v. *United States,* 182 U.S. 419, 425, 21 S. Ct. 842, 45 L. Ed. 2d 1162 (1901). If she has such a right, then the state cannot deprive her of this property right without due process. *Cleveland Board of Education* v. *Loudermill,* supra; *Goss* v. *Lopez,* 419 U.S. 565, 573–74, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975). The defendants deny that the plaintiff has such a right.

Historically, in this country, the constitutional rights of public employees were controlled by the doctrine of privilege under which courts deemed it a privilege rather than a right for one to retain employment in government. See, e.g., *McAuliffe* v. *New Bedford,* 155 Mass. 216, 29 N.E. 517 (1892). With time, however, the United States Supreme Court early intimated that "property" under the due process clause of both the fourteenth and fifth amendments was broad enough to include some nonmaterial things to which a person might be entitled. See, e.g., *Reagan* v. *United States,* supra, 424–25; see *Millard* v. *Connecticut Personnel Appeal Board,* 170 Conn. 541, 546, 368 A.2d 121 (1976). Gradually, the rights/privileges view lost favor, especially with the recognition that rights under the "life, liberty or property" language of the due process clause were fundamental, whereas privileges partook more of the concept of that which is bestowed by grace, something allowed at will. See *Sherbert* v. *Verner,* 374 U.S. 398, 83 S. Ct. 1790, 10 L. Ed. 2d 965 (1963). In 1971, in *Board of Regents* v. *Roth,* supra, 571, a public employment case, the United States Supreme Court said cate-

pension allegedly ordered to chill that public employee's exercise of his right to free speech not de minimis); see also *Click* v. *Board of Police Commissioners,* 609 F. Sup. 1199 (W.D. Mo. 1985) (three day suspension of policeman not de minimis).

gorically: "[T]he Court has fully and finally rejected the wooden distinction between 'rights' and 'privileges' that once seemed to govern the application of procedural due process rights." See *Perry* v. *Sindermann,* 408 U.S. 593, 597, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972). The reason for doing so, the *Roth* court said, was because " '[l]iberty' and 'property' are broad and majestic terms. They are among the '[g]reat [constitutional] concepts . . . purposely left to gather meaning from experience. . . . [T]hey relate to the whole domain of social and economic fact, and the statesmen who founded this nation knew too well that only a stagnant society remains unchanged.' *National Ins. Co.* v. *Tidewater Co.,* 337 U.S. 582, 646, 69 S. Ct. 1173, 93 L. Ed. 1556 [1949] (Frankfurter, J., dissenting)." *Board of Regents* v. *Roth,* supra. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey* v. *Brewer,* supra, 481.

With the right and privilege distinction dispatched, the concept of entitlements became focal in United States Supreme Court decisions on property interests that might be protected by the due process clause.[16] In *Board of Regents* v. *Roth,* supra, 570–71, which, with its companion case of *Perry* v. *Sindermann,* supra, recognized a property interest in continued public employment, Justice Stewart, writing for the majority, said that while "a weighing process" had long been "a part of any determination of the *form* of hearing required in particular situations by procedural due process," it was not the "weight" but the *"nature"* of the interest at stake that must first be examined. (Empha-

---

[16] See, e.g., *Mathews* v. *Eldridge,* 424 U.S. 319, 332, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (social security benefits); *Goss* v. *Lopez,* 419 U.S. 565, 574, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975) (public education); *Board of Regents* v. *Roth,* 408 U.S. 564, 576, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972) (continued public employment); *Bell* v. *Burson,* 402 U.S. 535, 540, 91 S. Ct. 1586, 29 L. Ed. 2d 90 (1971) (driver's license); *Goldberg* v. *Kelly,* 397 U.S. 254, 264, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970) (welfare benefits).

sis in original.) See *New Haven* v. *United Illuminating Co.,* 168 Conn. 478, 494, 362 A.2d 785 (1975). This meant, he said, that it must be determined "if the interest is within the Fourteenth Amendment's protection of liberty and property." *Board of Regents* v. *Roth,* supra, 571. In going on to define "property," Justice Stewart said: "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Id., 577; see *New Haven* v. *United Illuminating Co.,* supra. The court made clear that "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims." *Board of Regents* v. *Roth,* supra. Because it was found that Roth's property interest in his job as a professor at the University of Wisconsin was controlled by his contract of employment and the Wisconsin statutes, neither of which furnished the basis for a legitimate expectation of continuing employment, the Court held that Roth did not have a property interest and, therefore, no right to a hearing.[17] Id., 578.

---

[17] Later, in *Perry* v. *Sindermann,* 408 U.S. 593, 97 S. Ct. 2694, 33 L. Ed. 2d 570 (1972), the court, using the criteria of *Board of Regents* v. *Roth,* 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972), did find that Sindermann had a property interest in continued public employment at state colleges in Texas. In *Sindermann,* the court found that the claimed de facto tenure system extant in Texas was such that, if it was proven, would estab-

Applying these principles, we hold that the plaintiff had a "property interest" in her employment as a fire marshal. As we have seen, property interests are not created by the constitution, but their creation and dimension "are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Id., 577. Here, Connecticut statutory law created and defined the property interest. See, e.g., General Statutes §§ 29-297, 29-299, 29-300. The "rules or understandings" under which the plaintiff claims entitlement to the benefit of continued employment are evident in the statutory scheme under which she was appointed and expected to continue her employment as fire marshal. These gave her more than "an abstract need or desire" for the benefit of continued employment. There must be "more than a unilateral expectation" of that benefit; there must exist "rules or [mutually explicit] understandings that . . . support [her] claims of entitlement . . . ." *Board of Regents* v. *Roth,* supra; *Perry* v. *Sindermann,* supra, 601. It is clear that "property" denotes a broad range of interests that are secured by "existing rules or understandings." *Board of Regents* v. *Roth,* supra. A person's interest in a benefit, such as this plaintiff's, is a "property" interest for due process purposes because there were rules or understandings that supported her claim of entitlement to this benefit. *Perry* v. *Sindermann,* supra; *Board of Regents* v. *Roth,* supra.

lish a property interest in continued public employment in Sindermann. Thus, it appears that under *Roth,* Sindermann's property interest would "obligate college officials to grant a hearing at his request, where he could be informed of the grounds for his nonretention and challenge their sufficiency." *Perry* v. *Sindermann,* supra, 603.

We note that because both *Board of Regents* v. *Roth* and *Perry* v. *Sindermann* involve a failure to rehire rather than a discharge, the United States Supreme Court did not specifically reach the issue of what pretermination procedures would be required by procedural due process.

A preeminent source of a property right in employment cases is the "for cause" requirement in the removal process of the employee. " 'The hallmark of property, the Court has emphasized, is an individual entitlement grounded in state law, which cannot be removed except "for cause." ' " *Setliff* v. *Memorial Hospital of Sheridan County,* 850 F.2d 1384, 1395 (10th Cir. 1988), quoting *Logan* v. *Zimmerman Brush Co.,* 455 U.S. 422, 430, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982); see *RR Village Assn., Inc.* v. *Denver Sewer Corporation,* 826 F.2d 1197, 1201 (2d Cir. 1987); *Perri* v. *Aytch,* 724 F.2d 362, 366 (3d Cir. 1983). Thus, the existence of a "for cause" limitation for dismissal establishes an individual entitlement to continued employment that is significant enough to be considered a property right to which due process protection attaches.

The defendants appointed the plaintiff and she accepted her appointment under § 29-297. That statute provides not only that she be sworn to "the faithful performance of [her] duties," but that she "shall continue to serve in that office until removed *for cause.*" (Emphasis added.) This was no unilateral expectation by the plaintiff of continued employment or a situation where she served at the public employer's pleasure. Both parties knew and expected that she would continue her employment as fire marshal until "removed for cause." "Generally speaking, courts have recognized a property interest if, by statute, rule or contract, express or implied, the employee can only be fired for 'cause,' e.g., *Arnett* v. *Kennedy,* 416 U.S. 134, 94 S. Ct. 1633, 40 L. Ed. 2d 15 (1974) . . . ." *Ventetulo* v. *Burke,* 470 F. Sup. 887, 891 (D.R.I. 1978), aff'd, 596 F.2d 476 (1st Cir. 1979). The plaintiff, therefore, has a property interest that is protected by due process.

The United States Supreme Court first squarely faced the necessity of prescribing those procedures that

were required in the discharge of a public employee in *Arnett* v. *Kennedy,* supra. Kennedy, a federal civil service employee, was dismissed for allegedly having made recklessly false and defamatory statements about other employees in his agency. Under the pertinent regulations governing discharge, Kennedy was provided at least thirty days advance written notice prior to removal, the availability to material upon which the notice was based and the opportunity to appear before the official authorized to remove him to permit him to answer the charges against him. These regulations also entitled a discharged employee to appeal from an adverse decision either to a reviewing authority within the employing agency or directly to the civil service commission, and, moreover, such an employee was entitled to an evidentiary trial-type hearing at the appeal stage. Id., 143–46.

In a plurality opinion in *Arnett,* Justice Rehnquist said: "The employee's statutorily defined right is not a guarantee against removal without cause in the abstract, but such a guarantee as enforced by the procedures which Congress [the legislature] has designated for the determination of cause." Id., 152. Practically, then, Kennedy was only entitled to get those procedures prescribed by the statute governing discharge of federal civil service employees because, according to the plurality, his interest in continued employment was grounded on his expectation that he would be given *only* those procedures. Justice Rehnquist also pointed out that "where the grant of a substantive right is inextricably intertwined with the limitations on the procedures which are to be employed in determining that right, a litigant in the position of [Kennedy] must take the bitter with the sweet." Id., 153–54. Thus, it appeared that under *Arnett,* Kennedy had only a

"limited" property right and a right to procedural due process restricted to the procedures set up by the statute.

More recently, however, the United States Supreme Court has clearly rejected the "bitter with the sweet" approach of *Arnett* as misconceiving the constitutional guarantee of due process. In *Vitek* v. *Jones*, 445 U.S. 480, 491, 100 S. Ct. 1254, 63 L. Ed. 2d 552 (1980), the court pointed out that because "minimum [procedural] requirements [are] a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action." This was reiterated in *Logan* v. *Zimmerman Brush Co.*, 455 U.S. 422, 432, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982), and later in *Cleveland Board of Education* v. *Loudermill, supra,* 541.

"Once it is determined that due process applies, the question remains what process is due." *Morrissey* v. *Brewer, supra,* 481. It is crucial to note that the right to due process "is conferred not by legislative grace, but by constitutional guarantee. While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards." *Arnett* v. *Kennedy, supra,* 167 (Powell, J., concurring in part and concurring in result in part); *Cleveland Board of Education* v. *Loudermill, supra,* 541. The United States Supreme Court and other courts have often said that "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey* v. *Brewer, supra.* As we shall demonstrate, the answer as to what process is due in this case is not, as the defendants claim, to be found in the express language of the Connecticut statutes.

The defendants claim that the standard of due process under § 29-300 is not the constitutional right of due process as guaranteed under the fourteenth amendment and that the trial court erred in finding to the contrary. They not only claim error in the conclusion that the plaintiff had a property interest but assert that in doing so the trial court engrafted an "unnecessary restriction" on the plain requirements of § 29-300. We agree with the trial court's result, although we reach that result by a somewhat different route. See *Morris v. Costa,* 174 Conn. 592, 597–98, 392 A.2d 468 (1978).

In support of their position, the defendants argue that the only due process requirement is that literally set out in § 29-300, i.e., that the plaintiff be provided with notice in writing of the specific grounds of dismissal as well as the opportunity to be heard in her own defense at a public hearing. To support their contention that this is all of the due process that she was entitled to, the defendants rely heavily on the case of *Duchesne v. Williams,* 849 F.2d 1004 (6th Cir. 1988), which is based entirely on the United States Supreme Court decision in *Loudermill.*[18] The defendants' reliance is misplaced. Both these cases are distinguishable from the appeal before us. Because *Duchesne* is based on *Loudermill,* we must turn first to *Loudermill.*

Loudermill was a classified civil service employee who worked as a security guard for the Cleveland Board of Education. On his job application, Loudermill stated that he had never been convicted of a felony. At that time, he signed his name after a paragraph at the end of the application that stated he certified the veracity of his answers and acknowledged that false statements would result in his dismissal. Later, upon discovering

---

[18] We note that neither the briefs of the parties nor the opinion of the trial judge refer to either *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985), or *Duchesne v. Williams,* 849 F.2d 1004 (6th Cir. 1988).

that he had in fact been convicted of grand larceny, the board dismissed him for dishonesty in filling out the application. Under Ohio law, as a "classified civil servant," and by statute, as such an employee, he could be terminated only for cause and he was also entitled to an administrative review of his dismissal. Loudermill filed an appeal with the civil service commission, which, after hearings before a referee and the commission, upheld the dismissal. Although the commission's decision was subject to review in the state courts, he instead filed suit in the federal District Court alleging that the Ohio statute providing for an administrative review was unconstitutional on its face because it provided no opportunity for the employee to respond to the charges against him prior to removal, thus depriving the employee of liberty and property without due process.[19] The District Court dismissed his suit for failure to state a claim upon which relief could be granted. See Fed. R. Civ. P. 12 (b) (6). In doing so, the District Court held that because the very statute that created the "property right" in continued employment also specified the procedures for discharge and because those procedures were followed, "Loudermill was, by definition, afforded all the process due." *Cleveland Board of Education* v. *Loudermill,* supra, 536. That court also said that "the post-terminating hearing also adequately protected [his] liberty interests." Id. Later, the Sixth Circuit Court of Appeals reversed in part and concluded that "the compelling private interest in retaining employment, combined with the value of presenting evidence prior to dismissal, outweighed the added administrative burden of a pretermination hearing." Id., 537.

---

[19] Loudermill also claimed that the Ohio statute was unconstitutional as applied because discharged employees were not given sufficiently prompt postremoval hearings. *Cleveland Board of Education* v. *Loudermill,* 470 U.S. 532, 536, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985). We need not discuss this phase of his claim as it is not related to the issue before us.

Justice White, writing for the majority in *Loudermill,* after finding that the plaintiff possessed a property right in continued employment, reiterated that the constitution and not the state statute was crucial in determining what process Loudermill was due. *Cleveland Board of Education* v. *Loudermill,* supra, 539, 542. Justice White acknowledged that "the root requirement" of the due process clause was " 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.' *Boddie* v. *Connecticut,* [401 U.S. 371, 379, 91 S. Ct. 780, 28 L. Ed. 2d 113 (1971)] . . . . " (Emphasis in original.) *Cleveland Board of Education* v. *Loudermill,* supra, 542. He also pointed out that "[t]his principle requires 'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." Id.; *Perry* v. *Sindermann,* supra, 599; *Board of Regents* v. *Roth,* supra 569–70. He noted that "[e]ven decisions finding no constitutional violation in termination procedures have relied on the existence of some pretermination opportunity to respond" and that the need for some form of pretermination hearing from such cases was "evident from a balancing of the competing interests at stake." *Cleveland Board of Education* v. *Loudermill,* supra. Turning to *Mathews* v. *Eldridge,* 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), Justice White indicated that these interests are "the private interests in retaining employment, the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens." *Cleveland Board of Education* v. *Loudermill,* supra, 542–43.

In applying the legal principles discussed, including the balancing of the competing interests, the *Loudermill* court then said that "the pretermination 'hearing,' though necessary, need not be elaborate" and

that "[i]n general, 'something less' than a full evidentiary hearing is sufficient *prior* to adverse administrative action." (Emphasis added.) Id., 545. But it took pains again to say, citing *Boddie,* that " '[t]he formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the *nature of the subsequent proceedings.'* " (Emphasis added.) Id., 545, quoting *Boddie* v. *Connecticut,* supra, 378. The court specifically noted that, under Ohio law, Loudermill was *"later entitled to a full administrative hearing* and judicial review." (Emphasis added.) *Cleveland Board of Education* v. *Loudermill,* supra. It continued and said: "Here, the pretermination need not definitively resolve the propriety of the discharge," but rather, should operate as "an initial check against mistaken decisions—essentially a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." Id., 545–46. The "tenured public employee," it continued, "is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. . . . To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." Id., 546. Nevertheless, it stressed that its holding rested "in part on the provisions in Ohio law for a full post-termination hearing." Id. The *Loudermill* court "conclude[d] that all the process that is due is provided by a pretermination opportunity to respond, *coupled with* post-termination administrative procedures as provided by the Ohio statute." (Emphasis added.) Id., 547–48.

As can be seen, *Loudermill* is readily distinguishable from this case and does not control what process is due this plaintiff. Unlike our statutory scheme, the

Ohio law required that the order reducing, suspending (for more than three days) or removing any classified employee had to be filed "with the director of administrative services and state personnel board of review, or the civil service commission and the employee could appeal that order to the state personnel board of review or the commission." Ohio Rev. Code Ann. § 124.34. Where an appeal is filed, the Ohio board or commission is also required to notify the appointing authority and it must hear, or appoint a trial board to hear, the appeal and it may affirm, disaffirm or modify the judgment of the appointing authority. The Ohio law further provides that in cases of removal or reduction in pay for disciplinary reasons, either the appointing authority or the officers or employee may appeal from the decision of the state personnel board or the commission to the Court of Common Pleas of the county in which the employee resides.

This is in sharp contrast to our statutory scheme that does not provide for *any* review at the administrative level of the discharge of a local fire marshal. Not only did the *Loudermill* court rest its holding in part on the provisions of Ohio law "for a full post-termination hearing," but it specifically noted that "the existence of post-termination procedures is relevant to the necessary scope of pre-termination procedures." *Cleveland Board of Education* v. *Loudermill,* supra, 547 n.12. The defendants in this case cannot point, as did the *Loudermill* court, to any Connecticut law under which "the [employees] were later entitled [after a pretermination hearing] to a *full administrative hearing and judicial review.*" (Emphasis added.) Id., 545. The notice in writing of the specific grounds of dismissal and the opportunity to be heard in her own defense pursuant to § 29-300 cannot abstractly constitute the constitutional

process due this plaintiff who, once appointed under § 29-297, "shall continue to serve . . . until removed for cause."

Moreover, *Duchesne* does not serve the defendants' cause as they assert. The single issue in *Duchesne* was whether *Loudermill* required that a discharged municipal employee receive a pretermination hearing before a neutral and impartial decisionmaker rather than before the supervisor who fired him. The Sixth Circuit Court of Appeals answered in the negative, but again this case is not like our case.

In *Duchesne,* the defendant city manager told the plaintiff building inspector that he was to be terminated for improper conduct. The plaintiff's counsel asked for a pretermination due process hearing. After some proceedings in the federal District Court, the city manager gave the plaintiff a written description containing numerous reasons for the discharge. A pretermination hearing then took place over a period of three days. At that hearing, the plaintiff, who was represented by counsel, was allowed to present witnesses on his theory that the municipality did not have just cause to terminate him and he was also permitted to cross-examine the city's witnesses. The city manager, who presided at this hearing over the plaintiff's objection, reaffirmed the discharge. The *Duchesne* court decided that the procedures at the plaintiff's hearing gave him all the process he was due under *Loudermill. Duchesne* v. *Williams,* supra, 1006.

There was a difference, said the *Duchesne* court, between the purpose of the limited pretermination hearing and that of a later formal hearing. The purpose of the later formal hearing, it said, was "to adjudicate facts and to formulate and decide on the legal principles applicable to the circumstances." Id. In contrast, the purpose of the earlier presentation to the

supervisor was to afford some limited right to reply and to challenge the impending discharge. This right to reply would provide the employee with an opportunity to present his side of the case at an early stage to the official responsible for the discharge. Id. 1006–1007. It acknowledged "that there may be cases—perhaps this is one of them—in which the supervisory official is so biased that the *Loudermill* 'right-of-reply' process is meaningless." Id., 1008. This presented no problem in *Duchesne* because "[t]he full, post-termination, adversary, trial-type hearing [would] serve to ferret out bias, pretext, deception and corruption by the employer in discharging the employee. . . . The limited, 'right-of-reply' pretermination hearing, as defined in *Loudermill* is designed 'to invoke the employer's discretion,' his sense of fairness and mutual respect, his willingness to reconsider. It is not designed or well-adapted to uncover the employer's bias or corrupt motivation." Id. *Duchesne* does not avail the defendants in this case because our statutory scheme provides for no posttermination hearing.

While *Loudermill* is distinguishable from this case, it is clear that that case does mandate that when a property interest in continued public employment is created by a state statute, as in this case, the government must take an additional step, that of a pretermination hearing. We now must decide what kind of pretermination hearing, given the Connecticut statutory scheme, complies with the constitutional command of due process. This is to be done within the context of Justice White's "*some* kind of a hearing" requisite in *Loudermill* prior to the discharge of an employee who has a constitutionally protected property interest in his employment. (Emphasis added.) *Cleveland Board of Education* v. *Loudermill,* supra, 542. "The term 'hearing,' like 'jurisdiction,' is 'a verbal coat of many colors.' " H. Friendly, "Some Kind of Hearing," 123 U. Pa. L. Rev. 1267, 1270

(1975); *United States* v. *Tucker Truck Lines, Inc.*, 344 U.S. 33, 39, 73 S. Ct. 67, 97 L. Ed. 54 (1952) (Frankfurter, J., dissenting). Professor Davis defines a "hearing" as "any oral proceeding before a tribunal." 1 K. Davis, Administrative Law Treatise (1958) § 7.01, p. 407. In *Lee* v. *Board of Education,* 181 Conn. 69, 73, 434 A.2d 333 (1980), we acknowledged that the flexibility of the scope of due process is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure. *Morrissey* v. *Brewer,* supra, 481. There are times when no more is required than notice and the opportunity to present reasons, either orally or in writing, why the proposed action should not be taken. This is not one of those cases. Rather, it is a case that leans more toward those cases where "due process may also require further procedural safeguards such as the opportunity to confront and cross-examine adverse witnesses, oral argument, presentation of evidence and the right to retain an attorney." *In re Solid Waste Utility Customer Lists,* 106 N.J. 508, 521, 524 A.2d 386 (1987); 2 K Davis, Administrative Law Treatise (1982 Sup.) § 10.6, pp. 326–27, citing *Goldberg* v. *Kelly,* 397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970). This is particularly so because of the absolute lack, in this case, of any post-termination procedures at the administrative level wholly unlike *Loudermill* and *Duchesne.* The appeal to the Superior Court under § 29-300 is judicial, not administrative, review and was not, as we have shown, intended to be de novo. Moreover, the hearing afforded this plaintiff before the defendants was not investigatory but adjudicative, which, with its finality, constitutionally calls for more procedural safeguards than the defendants recognized were necessary in what was in law and fact not a pretermination hearing but a termination hearing.

The need for procedural safeguards that due process guarantees in this case goes beyond the notice and opportunity ("right to respond") language of § 29-300 and that is evident from all that we have said, particularly from a balancing of the interests at stake. In doing so, we utilize, as did the *Loudermill* and *Duchesne* courts, and as we have in the past; see, e.g., *Lee* v. *Board of Education,* supra; *In re Juvenile Appeal (Docket No. 10155),* 187 Conn. 431, 446 A.2d 808 (1982); the three distinct factors set out in *Mathews* v. *Eldridge,* supra, 334–35. First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and administrative burden that the additional or substitute procedural requirement would entail.

First, the significance of the private interest in retaining this position, which may well be one of a kind in this community, cannot be understated. The official action is merely not the denial of some application for initial employment as local fire marshal by the plaintiff or that of a temporary suspension but the grave sanction of outright severance and deprivation after appointment to that position. The mere circumstance that it carries a small stipend, as we have pointed out, is not critical. It is an absolute deprivation of a property interest that can be terminated only for "just cause" under the statute.

Second, the risk of the erroneous deprivation of the plaintiff's property interest in the position is unusually high given the conduct of the hearing of August 15, 1986, and the complete absence of any further admin-

istrative review.[20] The need for reaching an accurate decision after a meaningful opportunity to invoke the discretion of the decisionmaker before the termination takes effect; see *Cleveland Board of Education* v. *Loudermill,* supra, 543; was not, on this record, served by the process accorded the plaintiff. *Loudermill* recognized that "dismissals for cause will often involve factual issues"; id.; and a reading of the transcript of the hearing certainly demonstrates this, as the trial court suggested. That transcript, fairly read, also discloses a confrontational milieu that the procedural safeguards afforded were so minimal and lax "as to increase significantly the risk of an erroneous deprivation." *In re Juvenile Appeal (Docket No. 10155),* supra, 437.

Our consideration of the third factor under *Mathews,* the governmental interest of the defendants, including the function involved and the administrative burdens that additional or substitute procedural requirements would entail, does not, in the balancing process, weigh on the side of government in this case. As we require below, affording the plaintiff a meaningful opportunity to respond would not impose significant administrative burdens. We must assume that the employer shares the employee's interest in avoiding,

---

[20] We need not resolve the matter of whether the hearing the plaintiff did receive was required to be conducted by an impartial decisionmaker because, at oral argument, the plaintiff conceded that she never moved to disqualify any or all of the defendant commissioners on the grounds of bias or partiality. We, therefore, consider that matter effectively waived by the plaintiff.

In any event, we hasten to add that while an "impartial decisionmaker is an essential element of due process"; *Bowens* v. *North Carolina Department of Human Resources,* 710 F.2d 1015, 1020 (4th Cir. 1983); one does not cease to be an impartial decisionmaker simply because he has made a "conditional decision" to terminate an employee "pending further developments in an administrative process that had not then closed." *Morris* v. *Danville,* 744 F.2d 1041, 1044 (4th Cir. 1984). In addition, and importantly, administrative decisionmakers like judicial ones are entitled to a "presumption of honesty and integrity." See *Withrow* v. *Larkin,* 421 U.S. 35, 47, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975).

so far as possible, an erroneous decision. While we recognize that the introduction and admissibility of evidence is usually more informal in a hearing of this type than in a civil or criminal trial, Justice White's "some kind of a hearing" that comports with procedural due process must require more than this plaintiff received in the one and only administrative hearing available under our law. The "opportunity to be heard in [her] own defense" ought, when procedural due process is factored in, to mean that the plaintiff had the opportunity, at least, to examine the persons who were the complainants of the various charges proferred against her. In addition, there is no record of the defendants' decision of final termination except their conclusory determination of termination. While such a decision need not be in great detail, the complete absence of any statement of the reasons supporting that decision makes judicial review difficult. "A court reviewing an administrative determination cannot engage in surmise and conjecture to determine whether the decision was lawfully reached." *Lee* v. *Board of Education,* supra, 82; see *SEC* v. *Chenery Corporation,* 332 U.S. 194, 196–97, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947). In these circumstances, any inconvenience involved in having such witnesses present at the hearing and available to the plaintiff must give way to the grave potential of termination. Any burden on the defendants, if any there is, in requiring a record of the reasons upon which they actually acted in rendering their decision and the burden of producing the complainants is minimal at best.

The plaintiff, therefore, was entitled to the following procedural safeguards prior to her dismissal, some but not all of which she received. First, notification in writing of the specific grounds for the proposed dismissal. Second, the meaningful opportunity to be heard in her own defense, personally or by counsel, at a public hearing, before the defendants have the power of

dismissal. This meaningful opportunity includes not only the production at the public hearing, by the defendants, of the person or persons whose complaints form the basis of the ground or grounds in the notification of grounds for potential dismissal, but also the opportunity to examine at that time any or all of these complainants should the plaintiff decide to do so. Third, a statement, oral or in writing, of the reason or reasons upon which the defendants premise termination if that is the sanction imposed.

We agree with the trial court that the plaintiff was not accorded procedural due process and find no error in the judgment sustaining the appeal.

There is no error.

In this opinion the other justices concurred.