Thomas **SPOTTED EAGLE,** Marlene Spotted Eagle, Clara Champine, Susan Vielle, Sharon La Plante, Peter Red Head, Beatrice Reeves, Juanita Weasel Head, and Eunice Calf Tail, Plaintiffs,

v.

The **BLACKFEET TRIBE OF the BLACKFEET INDIAN RESERVATION, CITY OF BROWNING,** Dan Hagerty, Mary Spotted Wolfe, John Sharp, Orville Goss, Stewart L. Udall, Robert L. Bennett, James P. Canan, Noralf Nesset, the United States of America, and Charles Peterson, Defendants.

Civ. No. 2780.

United States District Court
D. Montana,
Great Falls Division.
July 7, 1969.

Barney Reagan, Cut Bank, Mont. Jerrold R. Richards, Helena, Mont., for plaintiffs.

Gordon R. Bennett, Helena, Mont., for defendant, Blackfeet Tribe, etc. Hagerty, Spotted Wolfe, Sharp, Goss.

Angland & Marra, Great Falls, Mont. for defendant, City of Browning.

Moody Brickett, U. S. Atty., Butte, Mont., for the U. S.

Udall, Bennett, Canan and Nesset, for defendant.

## OPINION AND ORDER

RUSSELL E. SMITH, Chief Judge.

In this action nine Blackfeet Indians, for themselves and for the class whom they seek to represent, ask the Court for a judgment which would:

1. Enjoin the use of the Blackfeet Tribal Jail.

2. By mandatory injunction require the tribal judges to grant persons within their jurisdiction all of the rights which defendants in state and federal courts enjoy, plus some rights not yet uniformly enjoyed by the general public, such as the alleged right of an alcoholic to be treated rather than jailed.

3. Nullify the Law and Order Code of the Blackfeet Tribe.

4. Award damages in the amount of $1,000.00, actual, and $4,000.00 punitive to each of the plaintiffs.

The defendants, the Blackfeet Tribe of the Blackfeet Indian Reservation Dan Hagerty, chief of the tribal police force; Mary Spotted Wolfe; John Sharp; Orville Goss, judges of the tribal court, have appeared by motion to dismiss for want of jurisdiction.

At the outset it should be made clear that this opinion is concerned only with the civil rights of Indians in their relationships with the Indian tribe and the officers of the tribe. It is not concerned with Indians in their relationship to whites or to the state or federal governments.

## THE NATURE OF PLAINTIFFS' RIGHTS.

Plaintiffs assert protected rights under the Civil Rights Act of May 31, 1870.[1] As against the tribe and its officers they have no such rights. Apart from the fact that the Act was a post civil war measure concerned with the rights of the recently liberated Negroes, the language of it, "all persons within the jurisdiction of the United States" given a meaning circa 1870, excludes Indians.

"Indians born within the territorial limits of the United States, members of, and owing immediate allegiance to, one of the Indian tribes (an alien, though dependent power), although in a geographical sense born in the United States, are no more 'born in the United States and *subject to the jurisdiction thereof'*, within the meaning of the first section of the Fourteenth Amendment, than the children of subjects of any foreign government born

1. "*All persons within the jurisdiction of the United States* shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." (Emphasis supplied) 42 U.S.C.A. § 1981.

within the domain of that government, or the children born within the United States, of ambassadors or other public ministers of foreign nations."[2] (Emphasis supplied)

The legal theory announced in Elk v. Wilkins was in accord with the realities. As of 1870 Custer had not yet met Crazy Horse on the Little Big Horn, and Chief Joseph had not yet led the generals of the United States Army on a frustrating chase through Montana. The only law governing the daily affairs of many of the western Indians was the tribal law.

■ Under firmly established legal principles Section 1981, *supra,* cannot govern inter-tribal relationships. Whether the tribes be regarded as sovereign or not,[3] the right of the tribes to make and enforce law has been consistently recognized by the courts and by Congress.[4] Since the Indian person is subject to tribal law and the white person is not, Indians and whites are not treated equally as required by Section 1981, *supra,* and cannot be unless tribal powers are extinguished. The language of the Civil Rights Act of 1870 was not intended to and cannot be stretched to govern relationships between the Indians and the tribal government.

■ Plaintiffs claim protected rights under 42 U.S.C.A. § 1985. That section does not provide any rights to the Indian in his relationship with his tribal government. It, too, is a civil war section and is aimed at those who conspire to deprive persons of equality of protection of the laws and of privileges and immunities under the law.[5] Conceivably a tribal court which conspired to treat one group of Indians differently from another might be in violation of this section, but the fact that Indians in a tribal court do not have the same rights enjoyed by whites in state and federal courts does not offend 42 U.S.C.A. § 1985.

■ Plaintiffs claim protected rights under 18 U.S.C.A. §§ 241 and 242, which provide criminal sanctions for violation of civil rights laws. These sections create no civil liability.[6]

■ Plaintiffs assert protected rights under the Fourteenth Amendment. In the Indian relationship with the tribe the Fourteenth Amendment provides no rights. It is directed at the states and an Indian tribe is not a state.

Plaintiffs claim protected rights under the Federal Bill of Rights. The Federal Bill of Rights protections have been broadly denied as between the Indians and their tribes.[7] However, Bill of Rights protections were afforded in a habeas corpus proceeding in which the court held that since the action of a tribal court was partly, at least, action of the federal government, the federal habeas corpus statute[8] could be used to test the legality of a detention.[9] The decision does not purport to deny the concept of tribal sovereignty nor does it attempt to delineate the extent to which

---

2. Elk v. Wilkins, 112 U.S. 94, 102, 5 S.Ct. 41, 28 L.Ed. 643 (1884).

3. Note, The Indian Bill of Rights and the Constitutional Status of Tribal Governments, 82 Harv.L.Rev. 1343, 1347–53 (1969).

4. Donnelly v. United States, 228 U.S. 243, 33 S.Ct. 449, 57 L.Ed. 820 (1913); Ex Parte Crow Dog, 109 U.S. 556, 3 S.Ct. 396, 27 L.Ed. 1030 (1883); Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed. 2d 251 (1959). See Federal Indian Law 395 (Felix S. Cohen ed. 1958).

5. Collins v. Hardyman, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253 (1951).

6. Hoffman v. Halden, 268 F.2d 280 (9 Cir. 1959), *overruled on other grounds* in Cohen v. Norris, 300 F.2d 24, 29–30 (9 Cir. 1962); Agnew v. City of Compton, 239 F.2d 226 (9 Cir. 1957), *overruled on other grounds* in Cohen v. Norris, 300 F. 2d 24, 29–30 (9 Cir. 1962).

7. Talton v. Mayes, 163 U.S. 376, 16 S.Ct. 986, 41 L.Ed. 196 (1896); Native American Church v. Navajo Tribal Council, 272 F.2d 131 (10 Cir. 1959); Glover v. United States, 219 F.Supp. 19 (D.C. Mont.1963).

8. 28 U.S.C.A. § 2241.

9. Colliflower v. Garland, 342 F.2d 369 (9 Cir. 1965).

Bill of Rights protections are afforded to Indians.

The Court concludes that the right of the plaintiffs in this case, as against the Blackfeet Tribe and its officers, are only those rights granted by the Indian Civil Rights Act of 1968.[10]

**JURISDICTION UNDER 28 U.S.C.A. § 1343(4)—AS TO THE TRIBE.**

The question then arises as to the remedies which are afforded for the protection of such rights. The Act itself in Section 1303 provides for habeas corpus relief, but no other. Is the habeas corpus relief exclusive, or does the language of 28 U.S.C.A. § 1343(4), as follows:

> "The district court shall have original jurisdiction of any, civil action *authorized by law to be commenced* by any person:
>
> \* \* \* \* \* \*
>
> "To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote. \* \* \* "

(Italics supplied)

give the Court jurisdiction of claims for damages and equitable relief where violations of the Indian Civil Rights Act have occurred?

■ There is no statute which authorizes persons to commence actions for the deprivation of rights under the Indian Civil Rights Act. It would seem to follow, however, from the decision of the Supreme Court of the United States in Jones v. Alfred H. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968) that a positive statutory declaration of a right to commence an action is not required. In that case a Negro who

had been deprived of the right to buy real property, by the act of a private individual, was given the right to enforce the provisions of 42 U.S.C.A. § 1982. In Jones v. Mayer Co., the Court, in footnote number 1, indicated that jurisdiction was based on 28 U.S.C.A. § 1343(4); and in footnote number 13 indicated that the fact that the statute does not provide a method of enforcement does not prevent the Court from fashioning an equitable remedy. There was no statute authorizing a person deprived of Section 1982 rights by the action of a private citizen to bring suit.[11] From this the Court concludes that when a federal law grants a civil right that persons protected by that law are authorized to bring actions to enforce the right, and that the federal district courts have jurisdiction of such actions.

■ The Court does have jurisdiction under 28 U.S.C.A. § 1343(4) where an Indian claims damages and equitable relief as against the Indian tribe and the officers of the tribe as officers[12] but not where the claim is against the officers of the tribe as individuals. The reasons for this conclusion follow:

**UNDER 28 U.S.C.A. § 1343(4)—AS TO THE INDIVIDUALS.**

The Indian Civil Rights Act is not, as are 42 U.S.C.A. §§ 1981 and 1982, an affirmative declaration of rights. Rather, it is negative in form and forbids certain tribal action. It is directed at a government rather than at individuals and, in this, is similar to the Fourth and Fifth Amendments to the Federal Constitution which are directed at the federal government, and the Fourteenth Amendment which is directed at state governments. The Indian Civil Rights Act cannot be held to authorize civil

---

10. 25 U.S.C.A. §§ 1301, 1302, 1303.

11. 42 U.S.C.A. § 1982 does authorize suits by persons deprived of civil rights under color of state law, but says nothing with respect to actions done independently of state authority.

12. While the rights of the Indians here stem from a statute rather than the

Constitution, the case is similar in this respect to those cases in which the federal courts have exercised jurisdiction over the state officers to protect Fourteenth Amendment rights. See Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

actions for violations of the prescribed acts by individuals.

In Bell v. Hood, 71 F.Supp. 813 (S.D. Cal.1947) [13] the court, following a remand from the Supreme Court (327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946)) was required to decide whether an action for damages for acts which deprived plaintiffs of due process and of freedom from unreasonable searches and seizures created a cause of action against the individuals under the Fourth and Fifth Amendments to the Federal Constitution. The Court held that there was no such cause of action, saying at page 818 of 71 F.Supp.:

"* * * But the rights described in the Fourth and Fifth Amendments are not 'federally protected' against invasion by individuals. As said before, those Amendments only 'federally protect' rights from invasion by the Federal Government.

\* \* \* \* \* \*

"The action at bar is not brought under the Civil Rights Act. (As heretofore noted the general Civil Rights Acts, to which reference is made here, are not available to the plaintiffs in this case.) And no cause of action is claimed against any official pretending to act under authority of state law. So the cases last cited cannot be considered as precedent for holding that plaintiffs have a federal cause of action because certain of their common-law rights which are protected in the Constitution against violation by the Federal Government have been violated by a group of individuals. Moreover, the mere enactment of the Civil Rights Act, 8 U.S.C.A. §§ 43, 47, strongly indicates that Congress did not regard the Constitution itself as providing a cause of action to individ-

uals whose rights thereunder are violated."

By a parity of reasoning the Court concludes that the Indian Civil Rights Act does not create rights as against individuals, and that, hence, within the meaning of 28 U.S.C.A. § 1343(4) there is no action *authorized by law to be commenced* against individuals, but that, as against the tribe and its officers, as officers, there is jurisdiction under 28 U.S.C.A. § 1343(4).

AS TO THE INDIVIDUALS UNDER 28 U.S.C.A. § 1331(a)—FEDERAL QUESTION.

This, however, does not dispose of the problem as to the individuals. In Bell v. Hood the Supreme Court decided that the assertion of rights under the Fourth and Fifth Amendments—whether valid or not—did involve a federal question, and that since the jurisdictional amount was claimed that the district court had jurisdiction under 28 U.S.C.A. § 41(1).[14]

■ On the basis of the reasoning in Bell v. Hood a federal question is presented even as to the individuals in this case, because the Court is required to determine whether the Indian Civil Rights Act does give rights as against those individuals, and that is a federal question. The problem then arises whether the amount claimed is requisite to provide jurisdiction under 28 U.S.C.A. § 1331(a).

AS TO THE INDIVIDUALS UNDER 28 U.S.C.A. § 1331(a)—REQUISITE AMOUNT.

■ If the nine plaintiffs can aggregate their damages the amount in controversy is $45,000; otherwise it is $5,000. It is clear that the claims may not be aggregated even if this were considered to be a class action.[15]

13. See Johnston v. Earle, 245 F.2d 793 (9 Cir. 1957) approving the decision in Bell v. Hood.

14. This is the present 28 U.S.C.A. § 1331 (a), except that the jurisdictional amount is now $10,000 and not $3,000.

15. Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (Mar. 25, 1969).

## AS TO THE INDIVIDUALS—PENDANT JURISDICTION.

 Still the jurisdictional problem as to the claim against the tribal officers and judges, as individuals, is not settled. The Civil Rights Act specifically gives the Court a habeas corpus jurisdiction and, as heretofore indicated, the Court does have an equitable jurisdiction over the tribe and over its judges and officers to the extent necessary to protect the rights granted by the Indian Civil Rights Act. That being true, is there a pendant jurisdiction over the damage claims? United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) authorizes a pendant federal jurisdiction for damage claims arising under state law, where there is a federal claim of sufficient substance to confer subject matter jurisdiction on the courts. That jurisdiction exists if there is a "common nucleus of operative fact." There is no question but that in this case the claims for injunctive and habeas corpus relief and the claims for damages have a common nucleus of operative fact. Under the *Gibbs* case no problem is created, because the plaintiff's right to damages, if that right exists,[16] stems from some other source than the Indian Civil Rights Act which creates the injunctive and habeas corpus jurisdiction. Some problems may be created by the fact that the injunctive or habeas corpus relief would be directed at the tribe and at the officers of the tribe in their governmental capacities; whereas the damage actions are directed at the persons who are the tribal judges and officers as individuals.

Under the criteria suggested in Gibbs, i.e., judicial economy, convenience and fairness to litigants, the damage claims should be tried in the federal court. The technical distinction between claims against the tribal judges and officers as individuals, and as officers, is not, in the opinion of the Court, sufficient to outweigh the other considerations expressed in Mine Workers v. Gibbs.

The conclusion reached is that the Court does have habeas corpus jurisdiction; does have equitable jurisdiction over the tribe and its officers; does have pendant jurisdiction over the judges and officers of the tribe as individuals insofar as the claims for damages are concerned. The motion to dismiss for want of jurisdiction is therefore denied.[17]

## ON THE MERITS.

This opinion is concerned solely with the problem of jurisdiction, and nothing said should be construed to bear upon any of the problems affecting the merits. Thus the Court intimates nothing with respect to the applicability of Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968) [18] to Indians who have been convicted of minor crimes in the Indian courts. This opinion intimates nothing with respect to the doctrines of judicial immunity,[19] nor official immunity from suit.[20] A host of problems [21] remain to be decided, unaffected by anything said here.

The motion of the defendants, the Blackfeet Indian Reservation, Dan Hagerty, Mary Spotted Wolfe, John Sharp, and Orville Goss to dismiss for want of jurisdiction is denied.

16. In Bell v. Hood, *supra*, the district court held that the right to damages for the unlawful search, etc., was a common law right arising out of state law. If this case should ever go so far an interesting problem would arise as to the source of any law giving plaintiffs a right to damages as against the tribe or its officers.

17. There is no motion to dismiss for failure of the complaint to state a claim.

18. Holding that under some circumstances a release of a state prisoner did not render his application for habeas corpus moot.

19. Randall v. Brigham, 74 U.S. (7 Wall.) 523, 19 L.Ed. 285 (1868).

20. Davis v. Littell, 398 F.2d 83 (9 Cir. 1968).

21. See Note, The Indian Bill of Rights and the Constitutional Status of Tribal Governments, 82 Harv.L.Rev. 1343 (1969).