FREEMAN, Chief Judge.
This is an action in twelve counts, in which the plaintiff seeks money damages and other relief from the defendants, Mohegan Tribal Gaming Authority (MTGA), Mohegan Tribal Gaming Enterprise (MTGE), The Mohegan Tribal Nation (Mohegan Tribe), James K. Keane and Raul Ruiz. The plaintiff claims that he is entitled to recover damages for alleged (1) negligent and intentional tortious conduct of the defendants; (2) violations of the Indian Civil Rights Act, 25 U.S.C. § 1301 et. seq. (ICRA); and (3) violations of his civil rights under 42 U.S.C. §§ 1981 and 1983. All of the plaintiffs claims arise out of his employment with the MTGA; in additional to claims for monetary damages, the plaintiff seeks injunctive relief, reinstatement to his former job and back pay. The defendants have moved to dismiss all counts of the complaint. For the reasons which follow, the defendants’ motion to dismiss the complaint is hereby granted.
*424 I.
All of the factual allegations of the complaint relate to events and circumstances in connection with plaintiffs employment by the MTGA. The plaintiff alleges, in pertinent part, that on or about March 17, 1998, another employee of the MTGA “forcibly shaved his face” resulting in numerous lacerations, abrasions and cuts; that thereafter the plaintiff was either terminated from his position as a slot attendant or demoted to the position of a janitor; that he was humiliated and ridiculed by his former supervisor in the performance of his new duties; that he was subjected to “racial epithets;” and that he requested a hearing relative to his demotion or termination from employment, but was not granted a hearing.
The plaintiff alleges the following intentional torts related to the incident of March 17, 1998: assault (count one); battery (count two); false imprisonment (count three); intentional infliction of emotional distress (count four); trespass to chattels (count five); conversion (count six); defamation (count ten); abuse of process (count twelve). Assault, battery, false imprisonment, intentional infliction of emotional distress, trespass to chattels, conversion, defamation and abuse of process are commonly recognized as intentional torts. Wright, Fitzgerald and Ankerman, Conn, Law of Taris (3rd ed.), Chp. 11; Newman and Wildstein, Tort Remedies in Connecticut, Chps. 12-14.
In count seven, plaintiff asserts a claim for “negligent supervision.” In count eight, the plaintiff alleges that he was “wrongfully discharged” and that his discharge violated the provisions of the ICRA. In count nine, he alleges that the defendants violated his civil rights by “constructively discharging” him; by “invading his privacy”; and by subjecting him to racial epithets and discrimination because of his race, color, and national origin, in violation of 42 U.S.C. § 1983. And, in count eleven, plaintiff alleges “unlawful discrimination based upon race” in violation of 42 U.S.C. § 1981.
The plaintiff instituted this action by filing a Notice of Claim and Claim with the court, relying on the provisions of the Mohegan Torts Code, M.T.O. 98-1, as a basis for his negligent and intentional tort claims. The Notice of Claim and Claim were filed with this court on August 24, 1998; the plaintiff alleged therein that injuries and damages were sustained on “numerous dates, the last of which is March 17, 1998.” The claim was therefore timely filed pursuant to M.T.O. 98-1, Sec. 9, 11. The defendants treated this action as a Claim filed pursuant to the Mohegan Tribal Gaming Authority Discriminatory Employment Practices Claims and Appeals Ordinance, M.T.O. 98-2 and filed a “record” with the court pursuant to M.T.O. 98-2, Sec. V. The plaintiffs claims were not timely filed under the provisions of M.T.O. 98-2, having been filed more than thirty (30) days after any of the alleged events referred to in the complaint. M.T.O. 98-2, Sec. 111(b)(1).
The defendants have moved to dismiss the entire complaint. They contend that the exclusive remedy for claims arising out of an employment relationship with MTGA, is the filing of a claim or appeal against the MTGA, pursuant to the Discriminatory Employment Practices Ordinance, M.T.O. 98-2 and that the MTGA has not waived its sovereign immunity in M.T.O. 98-2, for the claims asserted by the plaintiff. The plaintiff responds that his claims have been asserted under the provisions of the Mohegan Torts Code, M.T.O. 98-1 and are not required to be asserted under the Discriminatory Employment Practices Ordinance, M.T.O. 98-2. Additionally, defendants contend that count *425 eight, asserting a cause of action under the ICRA should be dismissed because the ICRA does not provide a cause of action for recovery of money damages, because no liberty or property interests of the plaintiff are at stake, and because tribal sovereign immunity has not been waived for ICRA claims in the Gaming Disputes Court. Defendants also contend that count nine, alleging violations of 42 U.S.C. § 1983 should be dismissed because the plaintiff does not allege and cannot show the required “state action” for the assertion of this claim and because the sovereign immunity of the defendants also bars such claim. Finally, defendants contend that count eleven, alleging violations of 42 U.S.C. § 1981, should be dismissed because it is barred by sovereign immunity.
II
A motion to dismiss is the proper vehicle for raising lack of subject matter jurisdiction. G.D.C.P. § 20.a.l. In their motion to dismiss the complaint on the basis that plaintiffs claims are barred by sovereign immunity, the defendants challenge the subject matter jurisdiction of the court; the issue of tribal sovereign immunity is jurisdictional in nature. McClendon v. United States, 885 F.2d 627, 629 (9th Cir.1989); Ager v. Office of Director of Regulation, 1997 WL 34678574, 1 G.D.R. 1, 4, 1 Am. Tribal Law 140, 1997 WL 34678574 (Mohegan Gaming Trial Ct.1997).
The Mohegan Tribe has all of the inherent sovereign rights and powers of an independent, indigenous sovereign nation. Mohegan Constitution, Art II. This includes the common-law immunity from suit traditionally enjoyed by sovereign powers. Saida Clam Pueblo v. Martinez, 436 U.S. 49, 50, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). As a matter of federal law, the Tribe is subject to suit only where Congress has authorized the suit or the Tribe has waived its immunity. Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc., 523 U.S. 751, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998); Santa Clara Pueblo v. Martinez, supra; United, States v. United States Fidelity & Co. 309 U.S. 506, 512, 60 S.Ct. 653, 84 L.Ed. 894 (1940). The sovereign immunity of the Tribe may be waived by the Tribal Council. Mohegan Constitution, Art. IX, Sec. 2(t). The MTGA was created by tribal ordinance to exercise all governmental and proprietary powers of the Tribe over gaming. M.T.O. 95-2. The MTGA may grant limited waivers of sovereign immunity to the extent permitted by Article XIII of the Mohegan Constitution M.T.O. 95-2, § 5(e)(10). The MTGE is the commercial enterprise established by the MTGA to operate and oversee all gaming activities on tribal lands. M.T.O. 98-2, Sec. l(n). Therefore, the MTGA and MTGE also share the Tribe’s sovereign immunity from suit.
At issue is whether the Tribe, MTGA or MTGE have waived their immunity from suit in this case, since no congressional act authorizes the negligent or intentional tort claims asserted in this action. Limited waivers of sovereign immunity have been granted for specific types of claims in the Mohegan Torts Code, M.T.O. 98-1 and in the Discriminatory Employment Practices Ordinance, M.T.O. 98-2. The plaintiff relies upon the limited waiver of sovereign immunity in the Mohegan Torts Code, M.T.O. 98-1, for assertion of his negligent and intentional tort claims in this action. A limited waiver of sovereign immunity was granted therein by the MTGA to permit claims for certain types of injuries, as follows:
SECTION 2.
(i) “Injury means death, harm to a person, or damage or loss of property which, if inflicted by a person under Connecticut state law or tribal law, *426 would constitute a tort and which is expressly covered by the liability insurance of the Gaming Enterprise Site without regard to any deductible amount contained in the insurance policy. SECTION 3.
(c) The sovereign immunity of The Mohegan Tribal Gaming Authority is waived in the following instances:
(1) Injuries proximately caused by the negligent acts or omissions of the Mohegan Tribal Gaming Authority.”
The defendants argue that because all of the plaintiffs claims arise out of his employment relationship with MTGA, there is no remedy available under M.T.O. 98-1. They argue that plaintiffs exclusive remedy is the filing of a claim or appeal under M.T.O. 98-2. M.T.O. 98-2 provides for a limited waiver of sovereign immunity to permit the filing of “claims” and “appeals” by employees who allege the commission of certain “discriminatory employment practices.”
The limited waiver granted in M.T.O. 98-2 was as follows:
Section II—Waiver of Sovereign Immunity
(a) The Mohegan Tribal Gaming Authority hereby grants a limited waiver of its sovereign immunity for the sole purpose of enabling an applicant for employment with the Gaming Enterprise or an employee or former employee of the Gaming Enterprise, who believes that he or she is or has been the object of a Discriminatory Employment Practice by the Gaming Enterprise, as defined in Section 1, part (i) of this ordinance, to file and process a Claim or an Appeal in the Gaming Disputes Court in accordance with and subject to the specific provisions expressed in this ordinance. The Mohegan Tribal Gaming Authority does not waive its sovereign immunity from claims, appeals, suits, complaints, or charges by any person based on any theory of liability for damages resulting from breach of express or implied contract or quasi-contract or from negligent or intentional tortious conduct, a,rising in, from, or out of the person’s employment or the application for or termination of employment. The named defendant in any Claim or Appeal filed under this ordinance shall be the Mohegan Tribal Gaming Authority, and no other person or entity, (emphasis added)
Subsection (d) provides: “This waiver of sovereign immunity shall be strictly construed.”
The defendants contend that all of the negligent and intentional tort claims asserted fall within the non-waiver language (underlined) in Section 11(a) and are therefore also barred under the provisions of M.T.O. 98-2. In Pirolli v. Mohegan Tribal Gaming Authority, 1998 WL 35281216, 1 G.D.R. 25, 1 Am. Tribal Law 411, 1998 WL 35281216 (Mohegan Gaming Trial Ct. 1998) (Wilson, J.), this court was required to construe the waivers in M.T.O. 98-1 and M.T.O. 98-2. The plaintiff therein asserted a negligent tort claim (negligent infliction of emotional distress) arising out of his employment relationship with the MTGA and argued that the sovereign immunity of the MTGA had been waived for such a claim in M.T.O. 98-1, Sec. 3(c)(1). The defendants, therein, as in the instant case, argued that M.T.O. 98-2 provided the exclusive remedy for employment based claims against the MTGA and that sovereign immunity had not been waived therein, for negligent and intentional tort claims arising from or out of an employment relationship with the MTGA. As in the case at bar, Pirolli’s claim was timely filed under the provisions of the Torts Code, M.T.O. 98-1, but was not presented within the time limits required by the Discriminatory Employment Practices Ordinance, M.T.O. *427 98-2. Id. at 1 Am. Tribal Law at 416, 1998 WL 35281216, *4. Therefore, the court was required to determine whether the negligent tort claim asserted fell within the waiver of immunity provisions under the Torts Code. The court, in a lengthy analysis of well settled principles of statutory construction, construed the waiver of immunity provisions in M.T.O. 98-1 and M.T.O. 98-2, in a manner so that both provisions were operative; so that the specific terms of M.T.O. 98-2 prevailed over the general definition of “injury” in M.T.O. 98-1; and so as to effect the least, rather than the most change in sovereign immunity. Id. at 1 Am. Tribal Law 417-18, 1998 WL 35281216, *5-6; Long v. Mohegan Tribal Gaining Authority, 1 G.D.R. 5, 10, 1 Am. Tribal Law 385, 1997 WL 34678573 (Mohegan Gaming Trial Ct.1977); White v. Hums, 213 Conn. 307, 312, 567 A.2d 1195 (1990). It held that it was not the intention of the Mohegan Tribal Council to waive its immunity under the Torts Code, for tor-tious conduct arising in, from, or out of a person’s termination of employment; and ’■fctthat the definition of “injury” in the Torts •⅞-'Code did not include injuries arising from ⅞ employment based tort claims.
Reading the definition of “injury” in the Torts Code, M.T.O. 98-1, Sec. 2(i), to mean injury other than the type of injury encompassed under the Discriminatory Employment Practices Claims and Appeals Ordinance No. 98-2, Sec. Ha gives reasonable effect to both ordinances. That is to say, the latter ordinance expressly does not waive any claims for inter alia., tortious conduct arising in, from or out of a person’s termination of employment. It is therefore necessary to conclude that it was not the intention of the Mohegan Tribal Council that such a claim would be included within the broad definition of “injury” contained in the Mohegan Torts Code.
Pirolli v. Mohegan Tribal Gaming Authority, supra at 1 Am. Tribal Law at 417, 1998 WL 35281216, *5. Therefore, the court held that sovereign immunity was not waived in M.T.O. 98-1, for employment based tort claims. It further held, that the plaintiffs claim for negligent infliction of emotional distress did not fall within the “non-waiver language” of M.T.O. 98-2, Sec. 11(a) and was barred by the doctrine of sovereign immunity. Id. at 1 Am. Tribal Law at 415, 1998 WL 35281216, *3.
In the case at bar, the plaintiffs claims were timely filed under the Torts Code, M.T.O. 98-1, and therefore, this court must determine whether plaintiffs claims fall within the waiver of sovereign immunity provisions in the Torts Code. The court finds that the plaintiff herein cannot rely upon the waiver provisions in M.T.O. 98-1, for assertion of his intentional tort claims in counts one, two, three, four, five, six, ten and twelve. The waiver of immunity in the Torts Code, M.T.O. 98-1, Sec. 3 is limited to the “negligent acts or omissions” (emphasis added) of the MTGA; there is no waiver in the Torts Code to permit the assertion of intentional tort claims. In addition, sovereign immunity is not waived under the provisions of M.T.O. 98-1, for the “negligent supervision” claim in count seven, because the tortious conduct alleged arose in connection with the termination of plaintiffs employment, and the definition of “injury” in the Torts Code, M.T.O. 98-1, Sec. 2(1) does not include injuries arising from employment based tort claims. Pirolli v. Mohegan Tribal Gaming Authority, supra at 1 Am. Tribal Law at 4.17, 1998 WL 35281216, *5.
To the extent that plaintiff has pled in counts one-seven, ten and twelve of the *428 complaint, that he was terminated from his employment or demoted, because of his race, his claims would appear to fall within the definition of a discriminatory employment practice, which is defined in M.T.O. 98-2, as follows:
“Discriminatory Employment Practice” means: a refusal by the Gaming Enterprise to hire or employ any individual, or a decision to bar, suspend or discharge from employment any individual because of such individual’s race, color, religious creed, age, sex, physical handicap, national origin or ancestry, or because the individual, after becoming employed by the Gaming Enterprise, filed a claim for workers’ compensation benefits or otherwise exercised such rights afforded to him pursuant to the provisions of the Connecticut Workers’ Compensation Act, C.G.S. § 31-275, et. seq.; provided that, it shall not be a discriminatory employment practice when the practice: (a) constitutes a legitimate implementation by the Gaming Enterprise of a bona fide occupational qualification or need; (b) was the result of a legitimate, nondiscriminatory business decision; (c) implements the provisions of the Management Agreement requiring preference in recruiting, training, and employment to members of the Mohegan Nation, their spouses and children and enrolled members of the federally recognized Indian Tribes; or (d) would have occurred notwithstanding any discriminatory employment practice.
M.T.O. 98-2, Sec. I(i).
The plaintiffs claims in counts one-seven, ten and twelve of the complaint, however, are barred under the provisions of M.T.O. 98-2 since they were not timely filed within thirty (30) days after any of the alleged events referred to in the complaint. M.T.O. 98-2, Sec. 111(b)(1). Further, if these claims do not fall within the definition of a “discriminatory employment practice”, they still fall within the non-waiver language of Sec. 11(a) and are barred by sovereign immunity. Pirolli v. Mohegan Tribal Gaming Authority, supra at 1 Am. Tribal Law at 415, 1998 WL 35281216, *3.
The negligent and intentional tort claims asserted against the Tribe, MTGE and MTGA in counts one, two, three, four, five, six, seven, ten and twelve are barred by sovereign immunity, and are dismissed as to the Tribe, MTGE and MTGA.
The plaintiff has also asserted negligent and intentional tort claims against his former supervisor, Keane and a co-employee, Ruiz. These claims also all arise out of the plaintiffs employment relationship with the MTGA. The Discriminatory Employment Practices Ordinance, M.T.O. 98-2, provides the only remedy for a MTGA employee or former employee who seeks to challenge adverse employment action by the MTGA, and is far from a general grant of authority for the bringing of actions for adverse employment decisions. Long v. Mohegan Tribal, Gaming Authority, supra, at 1 Am. Tribal Law 385, 389-90,1997 WL 34678573, *2-3.
The heart of the plaintiffs claims in counts one, two, three, four, five, six, seven, ten and twelve, is that he was treated differently from other employees and was demoted or terminated from his job because of his race. These claims, therefore, appear to fall within the definition of a “discriminatory employment practice”. Because M.T.O. 98-2 provides the only remedy for challenging discriminatory employment actions of the MTGA, the only proper defendant in a case brought by an employee of the MTGA is the MTGA itself, as the sole defendant.
The ordinance provides:
*429 The named defendant in any Claim or Appeal filed under this ordinance shall be the Mohegan Tribal Gaming Authority, and no other person or entity.
M.T.O. 98-2, Section 11(a).
The MTGA is the only proper defendant in an action under M.T.O. 98-2. Therefore, counts one, two, three, four, five, six, seven, ten and twelve against the defendants, Keane and Ruiz, must also be dismissed.
III.
The eighth count of plaintiffs complaint is entitled “wrongful discharge.” Although entitled as a “wrongful discharge” count, a careful reading of the plaintiffs allegations contained therein, makes it clear that the plaintiff has pled a cause of action for violations of the ICRA. In passing on a motion to dismiss, this court must consider the allegations of the complaint in their most favorable light. Long v. Mohegan Tribal Gaming Authority, supra at 1 Am. Tribal Law 385, 390-91, 1997 WL 34678573, *3-4; Jones v. Mohegan Tribal Gaming Authority, 1998 WL 35281215, 1 G.D.R. 15, 1 Am. Tribal Law 400 (Mohegan Gaming Trial Ct. 1998); Pirolli v. Mohegan Tribal Gaming Authority, supra at 1 Am. Tribal Law at 420, 1998 WL 35281216, *8. Therefore, the court will treat count eight as a claim for violations of the equal protection and due process clauses of the ICRA. The United States Congress passed the ICRA in 1968 to provide some form of “Constitutional” protection to individuals who come under the jurisdiction of an Indian Tribe. Johnson v. Mashantucket Pequot Gaming Enterprise, 1 Mash. 115 (1996) affd, 1 MPR 15 (1996). The act provides in part, as follows:
Sec. 1302 Constitutional Rights
No Indian Tribe in exercising powers of self-government shall ... (8) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law,
25 U.S.C. 1302(8).
Section 1302 has been held selectively to incorporate, and in some instances modify, the safeguards of the Bill of Rights to fit the unique needs of tribal governments. Long v. Mohegan Tribal Gaming Authority, supra at 1 Am. Tribal Law at 398, 1997 WL 34678573, *11-12. Section 1302(8) differs from the equal protection clause of the United States Constitution in that it guarantees the equal protection of the tribe’s laws, rather than of “the laws” generally. Id.; Santa Clara Pueblo v. Martinez, supra, 436 U.S. at 62, n. 14, 98 S.Ct. 1670.
The plaintiff claims that he was discharged from his position as a slot attendant or demoted to a janitorial position without an opportunity for a hearing. He alleges that he made a written request for a hearing but that the MTGA or MTGE refused to grant him a hearing and that he was therefore deprived of a “property right in his employment”, in violation of the due process clause of the ICRA. He does not elaborate on his equal protection claim.
The defendants contend that plaintiffs ICRA claims are barred (1) because defendants have not waived their sovereign immunity for ICRA claims in this court; (2) because plaintiff does not have a “property right” in his employment to which the ICRA’s due process guarantees apply; and (3) because plaintiff has not exhausted his administrative remedies prior to filing this action.
In support of their first argument, defendants contend that a suit under the ICRA in this court is barred by tribal sovereign immunity, relying on Santa *430 Clara Pueblo v. Martinez, supra. In Santa Clara, the Supreme Court held that suits against a tribe under the ICRA in federal court were barred by the doctrine of the tribal sovereign immunity. The Court did not hold that the ICRA was a bar to suits against tribes in tribal courts and specifically recognized that tribal forums were the appropriate forums to adjudicate ICRA claims.
Tribal forums are available to vindicate rights created by the ICRA, and Sec. 1302 has the substantial and intended effect of changing the law which these forums are obliged to apply. Tribal courts have repeatedly been recognized as appropriate forums for the exclusive adjudication of disputes affecting important personal and property interests of both Indians and non-Indians. Santa Clara Pueblo v. Martinez, 436 U.S. at 65-66, 98 S.Ct. 1670.
In Pirolli v. Mohegan Tribal Gaming Authority, supra., the defendants made the same argument asserted herein, that ICRA claims in this court were barred by sovereign immunity. Although plaintiffs ICRA claim therein was dismissed by the court for plaintiffs failure to first exhaust administrative remedies available to him, the court said that:
Because the Plaintiff instituted this action in a tribal court the bar to suit announced by the Supreme Court in Santa. Clara Pueblo is not applicable. The Plaintiff can commence and prosecute an action in this court “to vindicate rights created by the ICRA.”
Pirolli v. Mohegan Tribal Gaming Authority, supra at 1 Am. Tribal Law at 418, 1998 WL 35281216, ⅜7.
Other tribal courts have reached a similar conclusion. Dupree v. Cheyenne River Housing Authority, 16 ILR 6106 (Chy. R. Sx.Ct.App., Aug. 19, 1988); Inter-Tribal Court of Appeals of Nevada In and For the Fallon Tribal Court,, 24 ILR 6078 (Inter-Tr.Ct.App., Nev, Feb. 25, 1997). In Dupree, the court rejected a claim that sovereign immunity barred ICRA claims in tribal court.
It is hard to conceive that this language means anything else but that tribal courts must entertain causes of action based on the ICRA of 1968 and a claim of a bar to such actions based on the doctrine of sovereign immunity is inap-posite.
Dupree at 6108.
Because this action was instituted in tribal court, sovereign immunity is not a bar to the assertion of ICRA claims by the plaintiff.
The defendants’ second argument in support of their motion to dismiss plaintiffs ICRA claims, is that as a matter of law, the plaintiff has no property right in his employment. Therefore, the defendants contend that the ICRA count is legally deficient since it fails to state a claim cognizable under the ICRA. The plaintiff has alleged that his employer discharged him from his existing position as a slot attendant, and demoted him to a janitorial position, all without complying with his request for a hearing; and, that these acts constituted a taking of his property rights without due process.
In Pirolli v. Mohegan Tribal Gaming Authority, supra, the defendants also claimed that the plaintiffs ICRA count was legally deficient, arguing that plaintiff had no property right in his employment and therefore was not protected by the procedural due process provisions of the ICRA. The court did not reach the issue, however, concluding that while defendants’ claims might be grounds for a motion to strike, the court was not deprived of jurisdiction over the subject matter. Id. at 1 *431 Am. Tribal Law at 418, 1998 WL 35281216, *7 '*
 In the interests of judicial economy, a court may treat a motion to dismiss as a motion to strike. McCut-cheon and Burr Inc., v. Berman, 218 Conn. 512, 527, 590 A.2d 438 (1991). The only difference between the results of granting a motion to dismiss for lack of subject matter jurisdiction and the granting of a motion to strike, is that in the latter case, a losing party would have the opportunity to plead over.[1] Id. If the ability to amend after the granting of a motion to strike would be unavailing to a party, because nothing could be added to its eom-plaint by way of amendment to avoid the deficiencies in the original complaint, there is no sound reason to postpone resolution of these issues by awaiting a motion to strike. Id. at 528, 590 A.2d 438. This court will treat the motion to dismiss the ICRA claim, as a motion to strike, to the extent that defendants allege the count is legally deficient for failure to state a claim cognizable under the ICRA. Because the defendants’ argument is that the plaintiff had no property right or interest in his employment, there would be nothing the plaintiff could add to remedy the claimed deficiency, by way of amendment, after the granting of a motion to strike. Therefore, there is no reason to postpone the resolution of this issue.
The plaintiff claims that his rights to due process under the ICRA were violated in that his employment was terminated without his first being afforded a hearing complying with minimal due process requirements. ICRA’s due process guarantees are only applicable to plaintiffs employment however, if plaintiff has a property right in his continued employment. Cleveland Board of Education v. Loudermill, 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). If he has such a property right, the defendants cannot deprive him of this property right without due process. Id. Property interests are not created by the U.S. Constitution, but their creation and dimension “are defined by existing rules or understandings that stem from an independent source such as state [tribal] law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.” Board of Regents v. Roth, 408 U.S. 564, 576, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Generally speaking, courts have recognized a property interest if, by statute, rule or contract, express or implied, the employee can only be fired “for cause”. Bartlett v. Kramse, 209 Conn. 352, 367, 551 A.2d 710 (1988); Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L,Ed.2d 15 (1974).
The plaintiff argues that the provisions of the Employee Handbook providing for Board of Review hearings and appeals to the General Manager, and the provisions of tribal law permitting judicial review of “discriminatory employment practices” under M.T.O. 98-2, evince a clear intention to protect employees of the MTGA by providing administrative and legal avenues of redress for challenging unreasonable suspensions and terminations, and that these provisions confer upon him a property right in his employment to which ICRA due process guarantees attach. The defendants contend that the plaintiffs employment relationship is an “at will” relationship, and that this “at will” relationship has not been modified by any administrative review procedures or other provisions *432 of tribal law; and further, that no implied contract of continued employment can be found where the MTGA has not waived its sovereign immunity to permit claims for breach of contract or wrongful discharge.
In support of his argument that he has a property right in his employment with the MTGA, the plaintiff points to the provisions of the Employee Handbook which provide a five step review process for employees of MTGA to seek a reversal of an employment termination. The first three steps provide an employee with access to the employee’s immediate supervisor, the department manager, and then the employee relation’s department and/or vice president. Under step 4, a non-probationary employee who has received a disciplinary final written notice or termination is entitled to review of that warning or termination at a Board of Review hearing and an employee may appeal an adverse Board decision to the General Manager under step 5. The decision of the General Manager is then final, and there is no further right to judicial review except where there is a claimed “discriminatory employment practice.” The plaintiff contends that these provisions for administrative review, taken together with the appeal rights provided by M.T.O. 98-2 “evince a clear intention to protect employees of the Gaming Authority [from] the arbitrariness inherent in an at will relationship”.
The plaintiff relies heavily on the case of Johnson v. Mashantucket Pequot Gaming Enterprise, supra, in which the Mashan-tucket Pequot Tribal Court held that provisions of the tribe’s personnel policies and the provisions of the Mashantucket Pequot Temporary Emergency Employment Appeal Ordinance (Appeal Ordinance), “created and defined an individual entitlement to continued employment that is significant enough to be considered a property right to which [ICRA’s] due process protection attaches”. Id. at 119, 1 Mash.Rep. 165. The Appeal Ordinance specifically provided employees of the Gaming Enterprise with a right to appeal suspensions and terminations to the Mashantucket Pequot Tribal Court, and provided that the Court’s review would be of the termination or suspension of an employee “for just cause”. Id. at 117-118, 1 Mash.Rep. 165. The sovereign immunity of the Gaming Enterprise was waived under the Appeal Ordinance in order to permit a claim against the Gaming Enterprise by “any person who the Tribal Court finds was wrongfully discharged or suspended from employment by the Gaming Enterprise.” Johnson v. Mashantucket Pequot Gaming Enterprise, 1 MashApp. 21, 1 MPR 15, 19 (1996).
The decision in Johnson therefore, was largely based on important provisions of the Appeals Ordinance which was “replete with indicia of a property interest entitlement to employment.” Johnson v. Mash-antucket Pequot Gaming Enterprise, 1 Mash-App. 21,1 MPR at 19.
The employees’ right to a protected status in employment was further augmented by the Tribal Council’s enactment of legislation that authorized appeals to the Tribal Court from the decisions rendered by the Board of Review and the President/CEO. Temporary Emergency Employment Appeal Ordinance, #061694-03 (June 16, 1994) (“Ordinance”). Provisions of the Ordinance are replete with indicia of a property interest entitlement to employment: Section 11(a) waives the sovereign immunity of the Pequot Tribe with respect to “any claim against the Gaming Enterprise ... of any person who the Tribal Court finds was wrongfully discharged or suspended from employment by the *433 Gaming Enterprise ; Section VIII(d) instructs the Tribal Court to review the termination or suspension of an employee for “just cause” and to determine whether the discipline imposed was “arbitrary and capricious”; Section VI 11(d)(1) expressly provides that the disciplinary action must be grounded on a “reasonable basis” that the employee violated “conditions of employment” for the position held by the employee with the Gaming Enterprise; and Section IX empowers the Tribal Court to order “reinstatement of the employee and/or award lost wages and benefits” if it is found that the administrative decisions were arbitrary and capricious.

Id.

The Mohegan Tribe has not adopted a comparable ordinance to permit employee appeals of all suspensions and terminations by the MTGA; it has limited the right to appeal adverse employment decisions of the MTGA to actions in which there is a claim of a “discriminatory employment practice,” and the waiver of sovereign immunity granted therein is also limited so as to permit only claims or appeals alleging a “discriminatory employment practice.” M.T.O. 98-2, Sec. 11(a). M.T.O. 98-2, Section II, provides in pertinent part: “The [MTGA] does not waive its sovereign immunity from claims, appeals, suits, complaints or charges by any person based on any theory of liability for damages resulting from breach of express or implied contract or quasi contract ...” Under the provisions of M.T.O. 98-2, the Gaming Disputes Court only has authority to review initial employment decisions, and subsequent suspensions and terminations, upon the filing of a “claim”[2] or “appeal”[3] alleging that a person has been the object of a “discriminatory employment practice.” Employees of the MTGA do not have a general right to appeal all employment termination decisions of the General Manager.
In addition, there are no other provisions of Mohegan Tribal law waiving sovereign immunity of the MTGA to permit claims to be asserted for wrongful discharges. Nor are there any provisions of Mohegan Tribal law which permit or require this court to review terminations of employees for “just cause” or which permit this court to determine whether discipline imposed by the General Manager was “arbitrary and capricious.” These important indicia of a “property entitlement to employment,” found to present by the court in Johnson, are totally absent from the provisions of Mohegan tribal law. While the Board of Review hearing procedures and the right of appeal to the General Manager, provide some measure of job protections to MTGA employees, standing alone, they do not create a property interest in continued employment with the MTGA.
*434 The court finds that where the MTGA has not waived its sovereign immunity to permit the assertion of claims for “wrongful discharge” and where there are no provisions in tribal law requiring a court to review employee terminations or suspensions for “just cause,” the plaintiff has no property right in continued employment with the MTGA, to which ICRA’s due process protections apply. Because the court finds that the plaintiff has no property rights in his employment to which ICRA protections attach, it is not necessary to address defendants’ argument that plaintiff failed to exhaust his administrative remedies. For the foregoing reasons, the eighth count of plaintiffs complaint is dismissed.
IV.
In count nine of his complaint, the plaintiff seeks relief under 42 U.S.C. § 1983. Section 1983 provides, in pertinent part, that:
Every person who, under color of a statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law ...
42 U.S.C. § 1988 (1996).
Two essential elements must be alleged and proven to maintain a Section 1983 action. “First, the plaintiff must prove that the defendant has deprived him of a right secured by the ‘Constitution and Laws’ of the United States. Second, the plaintiff must show that the defendant deprived him of this constitutional right ‘under color of any statute, ordinance, regulation, custom or usage, of any State or Territory’. This second element requires that the plaintiff show that the defendant acted ‘under color of law’.” Adickes v. S.H. Kress and Company, 398 U.S. 144, 150, 90 S.Ct, 1598, 26 L.Ed.2d 142 (1970); see also Annunziato v. The Gan, Inc., 744 F.2d 244, 249-250 (2d. Cir.1984); Barnes v. White, 494 F.Supp. 194, 198-199 (N.D.N.Y.1980).
The plaintiff alleges that certain actions were taken by James K. Keane, his supervisor, and by Raul Ruiz, another employee. He alleges that these defendants were acting “under color of law” and were “acting in the capacity of enforcing rules and regulations, and laws of the Mohegan Tribal Council”. Nowhere does the plaintiff allege that any action was taken by state officials or that state officials were involved with other persons acting under state law to deprive the plaintiff of rights protected under the United States Constitution or federal law.
In a case involving officers of the Mash-antucket Pequot Tribe, the District Court for the District of Connecticut has ruled that Section 1983 was inapplicable to the tribal officers therein. See Rogers-Nicholas v. Hayward, Civil No. H-89-590, District Court District of Connecticut (1994) (Burns, S.J.). The Court explained as follows:
A claim under section 1983 requires a showing that the defendant acted under color of state law. Lugar v. Edmondson Oil Co., 457 U.S. 922, 924, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). Similarly, the plain language of the Fourteenth Amendment, and the precedent interpreting it, requires a showing of state action. Id. These two concepts—“under color of law” and “state action”—are identical in meaning. Id. at 935, 102 S.Ct. 2744. It is well-established law that actions by Indian tribes or tribal leaders do not constitute “state action” *435 and are therefore not within the scope of either Section 1983 or the Equal Proteetion and Due Process Clause[s] of the Fourteenth Amendment. Barms v. White, 494 F.Supp. 194, 198-200 (N.D.N.Y.1980) (actions by tribal leaders ■were not acts under color of law for purposes of section 1983); R.J. Williams Co. v. Fort Belknap Housing Authority, 719 F.2d 979, 981-82 (9th Cir.1983) (same) cert, denied 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985); Baria v. Oglala Sioux Tribe of Pine Ridge Reservation, 259 F.2d 553, 556 (8th Cir.1958) (actions by tribal government do not constitute state action for purposes of Fourteenth Amendment), cert denied, 358 U.S. 932, 79 S.Ct. 320, 3 L.Ed.2d 304 (1959); Spotted Eagle v. Blackfeet Tribe of Blackfeet Indian Reservation, 301 F.Supp. 85, 88 (D,Mont.l969) (same).
i Rogers-Nicholas at 10.
The purpose of 42 U.S.C. § 1983 is “to enforce the provisions of the fourteenth amendment” of the United States Constitution. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). It has long been settled that restraints imposed by the United States Constitution are not applicable to actions of tribal governments. See Santa, Clara Pueblo v. Martinez, supra, at 56, 98 S.Ct. 1670; Talton v. Mayes, 163 U.S. 376, 384, 16 S.Ct. 986, 41 L.Ed. 196 (1896) (restraints of Fifth Amendment to U.S. Constitution not applicable to legislative enactments of Indian tribe).
The plaintiff cannot make the requisite allegations to properly allege a claim under 42 U.S.C. § 1983, because under well established law, actions of a tribal government or its employees, do not constitute state action. Rogers-Nicholas, supra at 10 (and cases cited therein).
The ninth count of plaintiffs complaint must therefore be dismissed, for failure to allege an essential element of a claim under 42 U.S.C. § 1983 and for lack of subject matter jurisdiction.
V.
In count eleven, the plaintiff alleges that “defendants subjected plaintiff to unlawful discrimination based upon his race, in violation of 42 U.S.C. § 1981, et. seq.” Section 1981 provides, in pertinent part, that:
All persons within the jurisdiction of the United States shall have the same right in every state and Territory to make and enforce contracts ... and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens
42 U.S.C. § 1981(a).
Section 1981 is silent as to its applicability to Indian tribes in employment matters[4]. The Tenth Circuit Court of Appeals has determined that Section 1981 is not applicable to tribal employers. Wardle v. Ute Indian Tribe, 623 F.2d 670 (10th Cir.1980). In Wardle, the plaintiff who had been employed by the Ute tribe as a policeman was discharged from his employment so that the Tribe could hire a “qualified tribal member” into his position. The plaintiff, who was not a tribal member, alleged racial discrimination on the part of the tribe and tribal members, and brought suit under several civil rights statutes including § 1981.
*436 In Wardle, the court held that none of the plaintiffs civil right claims, including the § 1981 claim, stated a federal cause of action:
The statutory provisions: upon which plaintiff relies do not provide him a cause of action, even assuming that these provisions would otherwise apply to Indian tribes and that the discharge in this case was racially discriminatory, (citation omitted). Each of the statutes invoked by plaintiff is a broad, general provision guaranteeing equal rights and equal protection or prohibiting racial discrimination. These broad civil rights provisions do not specifically prohibit preferential employment of tribal members by Indian tribes. On the other hand, 42 U.S.C. § 2000e specifically exempts Indian tribes from compliance with the prohibition against discriminatory discharge from employment. Under such circumstances, the specific provisions control over the more general ones.
Id. at 673 (citation omitted)
A Section 1981 action against tribal officials was also dismissed for failure to state a claim in Nero v. Cherokee Nation of Oklahoma, 892 F.2d 1457 (10th Cir.1989). The plaintiff therein alleged racial discrimination by the Cherokee tribe and tribal officials in refusing to accord him the benefits of tribal membership. The Nero court, in holding that the plaintiff had failed to state a claim for relief under Section 1981, found that “|a]pplying the statutory prohibitions against race discrimination to a tribe’s designation of tribal members would in effect eviscerate the tribe’s sovereign power to define itself ...” Id. at 1463.
In a recent tribal court decision, relying in part on Wardle, the Mashantueket Pequot Tribal Court dismissed a § 1981 action for failure to state a claim and for lack of subject matter jurisdiction. Lems v. Maskantucket Pequat Gaming Enterprise, Et. Al, CV-97-117, Mem. of Decision on Motion to Dismiss (Aug. 7, 1997) (Shibles, J.) as modified by 2 Mash. 242 (1997).
The court finds the reasoning of Wardle to be compelling. The alleged discriminatory employment action taken by the Tribe is not expressly proscribed by Section 1981. The “express exemption for Indian tribes from the employment discrimination provision of Title VII would have no meaning if section 1981 was interpreted to be applicable to Indian Tribes in employment matters.”
Id. at 38 (citation omitted)
The reasoning in Wardle is persuasive. This court finds that 42 U.S.C. § 1981 does not apply to Indian tribes or their employees in employment matters. Therefore, count eleven is dismissed for lack of subject matter jurisdiction.
VI.
For the reasons stated herein, the defendants’ motion to dismiss the complaint is granted.

. The results are the same under a motion to dismiss pursuant to G.D.C.P. § 20 and a motion to strike pursuant to G.D.C.P. § 21.

. A “claim’ is defined in M.T.O. 98-2, Sec. 1(a) as follows: "Claim" shall mean a written complaint, set forth on a form provided by the Chief Clerk of the Court and filed by the Claimant directly with the Court pursuant to the applicable provisions of this ordinance, alleging that the claimant has been the object of a discriminatory employment practice.

. An “appeal” is defined in M.T.O. 98-2, Sec. 1(a) as follows: "Appeal” shall mean an appeal, set forth in writing on a form provided by the Chief Clerk of the Court and duly filed by the claimant with the Court in accordance with the applicable provisions of this ordinance, (1) from a Final Decision of the General Manager affirming or overturning, in whole or in part, a decision of the Board of Review that the individual filing the Appeal was or was not the object of a discriminatory employment practice by the Gaming Enterprise, as herein defined, or (2) from a decision of the Trial Court, rendered pursuant to this ordinance, by which the claimant or General Manager is aggrieved.

. Certain federal labor and employment statutes specifically indicate that they are inapplicable to Native American Tribes. 42 U.S.C. § 2000e(b)(l) excludes Indian tribes from the definition of ‘employer’ under Title VII of the Civil Rights Act of 1964; see also 42 U.S.C. §§ 12101-213, Title I of the American with Disabilities Act of 1990.